IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Julian Fernandez Mendoza,<br><br>    Defendant. | No. CR-09-01406-002-PHX-SRB (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, SENIOR UNITED STATES DISTRICT JUDGE:

Pending before the Court is a Superseding Petition, filed on April 3, 2017, alleging one violation of supervised release. Pursuant to a Standing Order of Referral, dated July 9, 2014, the Honorable Susan R. Bolton, Senior United States District Judge, referred the Petition to Revoke Supervised Release in the above-numbered case to the undersigned Magistrate Judge to conduct a "hearing and preparation of findings and recommendations . . . and submit the necessary Report and Recommendation . . ." as authorized under 18 U.S.C. § 3401(i) and 28 U.S.C. § 636(b)(3).

**I.    Procedural Background.**

On July 22, 2016, Defendant was sentenced to 3 months of imprisonment and 60 months of supervised release for a violation of supervised release. (Doc. 507.) On April 3, 2017, a Petition was filed alleging one violation of Defendant's supervised

release. (Doc. 543.)

On August 15 and 18, 2017, this Court conducted an evidentiary hearing.[1] The government proceeded on the one allegation in the Petition:

Allegation A:

**<u>Standard Condition #1</u>** which states, []*"You shall not commit another federal, state or local crime during the term of supervision."*

On or about March 9, 2017, Mendoza committed a new crime, Unlawful Flight from Law Enforcement, a felony violation of Arizona Revised Statutes § 28-622.01. Mendoza was arrested for the crime on March 20, 2017. This is evidenced by Buckeye Police Departmental Report Numbers 17-0309167 and 17-0320012. Grade B violation. U.S.S.G §7B1.1(a)(2).

(Doc. 543 at 1.)

Defendant was present and assisted by counsel. The government called Probation Officer Chris Woodiel and Buckeye Police Office Michael Rhodes. The government's Exhibits 1-6 and 8-9 were admitted into evidence. (Doc. 575.) Defense Exhibits 101-104 and 107-108 were admitted into evidence. (*Id.*)

## II. Findings of Fact.

The Court submits the following findings of fact.

### A. Probation Officer Chris Woodiel.

On October 3, 2016, Probation Officer Woodiel met with Defendant and reviewed his conditions of supervised release. (*See* Exhibit 3.) Condition One of the terms of supervised release required that Defendant not commit another federal, state, or local crime during the term of supervision. (*Id.* at 16; Doc. 585 at 16.)

### B. Buckeye Police Department Officer Michael Rhodes.

#### 1. The March 9th Attempted Traffic Stop

On March 9, 2017, Buckeye Police Department Officer Rhodes was driving a fully marked Buckeye Police Department patrol vehicle at approximately 10:30 p.m. in

---

[1] The Court did not review the issue of consent with the parties prior to conducting the evidentiary hearing. On September 7, 2017, the Court met with Defendant, his counsel, and the government on the record. The parties gave consent, in writing, for this Court to issue a Report and Recommendation. (Doc. 589.)

Buckeye, Arizona. Officer Rhodes's patrol vehicle had standard police markings, emergency lights, sirens, and two mounted spotlights. (Doc. 585 at 21.) Officer Rhodes saw a Chevrolet S-10 truck traveling westbound on Baseline Road. The truck had an exposed white light bulb that was "hanging down" in the rear of the truck. (*Id*.) Officer Rhodes also saw a "hitch ball" attached to the bumper of the truck that was obstructing the license plate. (*Id*.) Officer Rhodes conducted an MVD records check of the truck through his vehicle's computer. (*Id*. at 22.) He also ran a records check through police dispatch.

The truck was registered to Defendant. Defendant's MVD picture also appeared on the screen in Officer Rhodes's patrol vehicle. (*See* Exhibit 8.) Officer Rhodes initiated a traffic stop of the truck based upon these two civil traffic violations. Officer Rhodes contacted police dispatch personnel and activated his emergency lights. Officer Rhodes turned on his "lights and sirens" and turned on his spotlight (located on the left side of his driver door). (Doc. 585 at 24.)[2] Officer Rhodes shined the spotlight "into the driver's side side mirror" for "officer safety" and "to identify the driver of the vehicle as I am approaching the vehicle." (*Id*. at 25.) Officer Rhodes testified his police car was "less than 10 feet" from Defendant's truck when he initiated the traffic stop. (*Id*. at 34.)

Officer Rhodes testified that when he aimed him spotlight into the driver's side mirror, "I observed the defendant clearly look into the mirror, giving me a clear look at – a clear view of his face in that mirror." (*Id*. at 25.) Officer Rhodes identified Defendant as the person driving the Chevrolet S-10 truck. After Officer Rhodes initiated the traffic stop, Defendant's truck "immediately accelerated, not stopping at a four-way controlled stop sign intersection at 1st Street and Baseline Road." (*Id*. at 26.) Defendant's truck continued accelerating westbound on Baseline Road and Officer Rhodes discontinued the stop based upon Buckeye Police Department Police and public safety. Police had no further contact with Defendant's truck that night.

---

[2] Officer Rhodes testified his sirens will not activate without the emergency lights also activating. (Doc. 585 at 56.)

- 3 -

Officer Rhodes testified that Exhibit 6 contained a recording "at the time or around the time of the attempted traffic stop." (*Id.* at 27.) Officer Rhodes testified that after the pursuit ended, Buckeye Police dispatch also looked through the "in-house Spillman system" that contained reports of where Defendant may have resided. Officer Rhodes saw Defendant's truck outside of Defendant's "listed residence" on March 16, 2017. (*Id.* at 35.)

### 2. The March 20th Traffic Stop.

On March 20, 2017, Officer Rhodes saw Defendant's S-10 truck near 1st Street and Monroe in Buckeye and conducted a traffic stop. Officer Rhodes stopped the truck for the same traffic violations (exposed light and obstructed license plate). Defendant's truck yielded normally, and Defendant was driving the truck. Police later took pictures of the truck. (*See* Exhibits 5 and 6.) Defendant was arrested by Officer Rhodes.

Officer Rhodes identified the MVD photo of Defendant (Exhibit 8) and booking photo of Defendant (Exhibit 9).

### 3. Cross-Examination.

Officer Rhodes testified that he told dispatch on March 9, 2017, that the pursuit was terminated because Defendant's truck was "reaching speeds of 60-70" miles-per-hour. (Doc. 585 at 42.) In the "Form 4" arrest paperwork, Officer Rhodes wrote that Defendant's truck was traveling 90 miles-per-hour on March 9, 2017. (*Id.* at 59.) Officer Rhodes testified the truck was driving 60-70 miles-per-hour when he advised dispatch, and "was not quite to 90 miles an hour yet." (*Id.*)

Officer Rhodes agreed that he saw the MVD photograph of Defendant prior to seeing Defendant in the side-view mirror. Officer Rhodes gave the dispatcher a description of the driver rather than telling the dispatcher that the driver was Defendant Julian Mendoza. (*Id.* at 42.)

Officer Rhodes saw the driver while he was driving 35 miles-per-hour and checking the MVD computer in the police car. (*Id.* at 53.) Officer Rhodes agreed it was about "5 to 10 seconds that [he] saw the driver through the outside rear-view mirror."

(*Id*. at 53.) Officer Rhodes had not met Defendant before. (*Id*. at 55.) Officer Rhodes's body camera did not make a recording of the March 9th attempted traffic stop due to a malfunction with the body camera. (*Id*. at 57.)

On March 20, 2017, Defendant immediately pulled over for the traffic stop, and Defendant was not profane or aggressive with Officer Rhodes. (*Id*. at 60-61.) Officer Rhodes arrested Defendant for the March 9th Unlawful Flight offense but did not Mirandize Defendant. (*Id*. at 73.) Officer Rhodes made statements to Defendant that he was the officer who attempted to stop Defendant on March 9, 2017. (*Id*. at 74-75; Exhibit 103.)

Officer Rhodes stated "I didn't Mirandize him because I hadn't planned on asking him any questions about the crime which I think he committed." (*Id*. at 76.)

On March 20, 2017, Officer Rhodes identified Defendant as the driver from the March 9th attempted traffic stop "[a]s soon as I identified him as the driver." (*Id*. at 71.)

### 4. Court Examination

Officer Rhodes testified that Defendant was looking directly into the side-view mirror approximately half of the 5 to 10 seconds that Officer Rhodes could see the driver before the truck fled. (*Id*. at 98.) Officer Rhodes estimated the mirror was an 8-10 inch mirror, but later testified he could not estimate the size of the mirror. (*Id*. at 97.) On March 20, 2017, Officer Rhodes knew he was stopping the truck from the March 9th attempted traffic stop "once I was behind the vehicle and read the license plate." (*Id*. at 99.) When asked why he did not conduct a felony stop of the vehicle on March 20th, Officer Rhodes testified "[a]t that time I wasn't sure who was driving the vehicle." (*Id*. at 99.)

### C. Police Recordings

The Court reviewed the dispatch audio recording from March 9, 2017. (Exhibit 6.) Officer Rhodes advised the dispatch office that he was conducting a traffic stop. During the recording, Officer Rhodes stated: "He's failing to yield." The dispatch office connected a second officer into the conversation. Officer Rhodes identified the driver as a

"young Hispanic male driver with a moustache." Officer Rhodes was directed to a photograph of Defendant and Officer Rhodes said "10-4, that's him."

The Court reviewed the dispatch audio recording of the March 20th traffic stop. (Exhibit 102.) The recording reflects a standard traffic stop.

The Court reviewed the body camera recording of the March 20th traffic stop. (Exhibit 103.) Approximately 30 seconds into the recording, Defendant asked why he was being arrested. Officer Rhodes stated "You are under arrest for felony flight." Defendant replied "Felony flight? I never took off from nobody."

At two minutes and 30 seconds into the recording, Officer Rhodes stated to Defendant (who was handcuffed), "Just so you know, I'm the same officer that tried to pull you over last week." Defendant replied "I've never got pulled over at all." Officer Rhodes responded "I know you didn't get pulled over because you took off from me." Defendant denied involvement. Officer Rhodes stated "I could see you from your driver-side mirror." Defendant replied "You got the wrong person." Officer Rhodes stated "No I don't."

The driver-side mirror can best be seen at 38-39 seconds into the recording of Exhibit 103. The mirror can also be seen in Exhibit 104.

**III. Conclusions of Law.**

"A district court may 'revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Vallejo*, 69 F.3d 992, 994 (9th Cir. 1995) (quoting 18 U.S.C. § 3583(e)(3)). Allegation A alleges a violation of Standard Condition One requiring Defendant not commit another federal, state, or local offense.

Pursuant to A.R.S. § 28-622.01, "the essential elements of the crime of unlawful flight are: (1) the defendant, who was driving a motor vehicle, wil[l]fully fled or attempted to elude a pursuing official law enforcement vehicle, and (2) the law enforcement vehicle was appropriately marked showing it to be an official law

enforcement vehicle." *State v. Martinez*, 230 Ariz. 382, 384, ¶ 8 (App. 2012) (citing *State v. Fogarty*, 178 Ariz. 170, 171 (App. 1993)). The evidence establishes, and Defendant does not dispute, that the driver of the truck on March 9, 2017, committed the felony offense of Unlawful Flight. The sole question before the Court is one of identification of the driver of the truck.

The Court finds by a preponderance of the evidence that Defendant was the individual driving the truck on March 9th who fled from Officer Rhodes. The truck was registered to Defendant, which limits the number of individuals who would be driving the vehicle. At the time the truck was fleeing from Officer Rhodes, Officer Rhodes identified the driver as a "young Hispanic male driver with a moustache." Defendant matches that general description. Shortly thereafter, Officer Rhodes was directed to a photograph of Defendant and Officer Rhodes immediately said "10-4, that's him." Officer Rhodes also testified and identified Defendant as the individual driving the truck on March 9, 2017. Officer Rhodes testified that he could see the driver's face because the driver looked directly at him through the driver's-side mirror and Defendant's face was illuminated by the officer's spot light in the mirror. The Court found Officer Rhodes's testimony was credible.

Although the government has met its burden of proof, its case was not immune from impeachment. Significantly, the ability of Officer Rhodes to see the driver of a vehicle through the driver-side mirror was limited due to the size of the mirror, the distance between vehicles, the time the driver was looking directly into the mirror, and the illumination of the driver's face. Also, Officer Rhodes did not initiate a felony stop on March 20, 2017, even though Defendant was driving the truck at that time. Defendant's counsel spent considerable time attempting to impeach Officer Rhodes because Officer Rhodes asked questions/made statements while Defendant was in custody after his arrest on March 20, 2017. The Court finds the post-arrest impeachment, if any, attenuated regarding the issue of identification.

## IV. Recommendation

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and LRCrim 57.6(d)(4), Rules of Practice for the District of Arizona, the undersigned Magistrate Judge **RECOMMENDS** that the Honorable Susan R. Bolton, Senior United States District Judge, after an independent review of the record, find Defendant violated the terms of supervised release contained in Allegation A.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(b)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

**IT IS ORDERED** setting a final disposition hearing for **October 3, 2017**, at **1:30 p.m.** before the Honorable Susan R. Bolton, Senior United States District Judge, in Courtroom 501, Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, Arizona.

**IT IS FURTHER ORDERED** that the U.S. Probation Department shall prepare a Disposition Report and the Defendant shall cooperate with the Probation Department in its preparation of the Disposition Report.

**IT IS FURTHER ORDERED** the parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2). Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an

///
///
///
///

order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Crim. P. 59.

Dated this 13th day of September, 2017.

Honorable John Z. Boyle
United States Magistrate Judge